# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | |
| v. ) | |
| ) | |
| ) | COMPLAINT |
| PRESTIGIOUS PLACEMENT, INC.; and ) | |
| PROSERO, INC., d/b/a QOBALT, d/b/a ) | JURY TRIAL DEMAND |
| SPINNAKER MANAGEMENT GROUP, ) | |
| LLC ) | |
| ) | |
| Defendants. | |

## COMPLAINT

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-2, as amended, (Title VII), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Sacarol White, Starkisha White, and a class of female employees who were adversely affected by such practices. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission alleges Defendants, Prestigious Placement Inc., and Prosero Inc., d/b/a Qobalt, d/b/a Spinnaker Management Group, LLC (Spinnaker), subjected Sacarol White, Starkisha White, and a class of female employees to sexual harassment, and then retaliated against them for complaining about the harassment by terminating their employment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to §706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3), 42 U.S.C. §2000e-3(a), and §102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful employment practices alleged in this Complaint were committed within the jurisdiction of the United States District Court for the Western District of Tennessee.

## PARTIES

3. Plaintiff, Equal Employment Opportunity Commission (Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by §706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendants Prestigious Placement Inc. (Prestigious) and Prosero, Inc., d/b/a Qobalt, d/b/a Spinnaker Management Group (Spinnaker), have operated as a joint employer.

5. At all relevant times, Prestigious operated as a for-profit corporation in the state of Tennessee and the City of Memphis, and continuously employed at least 15 employees.

6. At all relevant times, Prestigious continuously operated as an employer engaged in an industry affecting commerce within the meaning of §701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7. Defendant Spinnaker, a third-party provider, provides procurement outsourcing services, and is registered as a foreign for-profit corporation in the state of Delaware, with its principal office located in Houston, Texas.

8. At all relevant times, Spinnaker operated as a foreign for-profit corporation continuously conducting business in the state of Tennessee and the City of Memphis, and continuously employed over 15 employees.

9. At all relevant times, Spinnaker continuously operated as an employer engaged in an industry affecting commerce within the meaning of §701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

10. Prestigious hired Sacarol White and other females and assigned them to work at the Cummins jobsite under the direction and supervision of Spinnaker's supervisors and team leads.

11. Prestigious and Spinnaker exercised some control over the working conditions of the employees placed by Prestigious at the worksite of Cummins and that Spinnaker managed.

12. Both Prestigious and Spinnaker directed and supervised the employees placed by Prestigious.

13. If employees reported to work late, they contacted either Prestigious or Spinnaker.

14. Prestigious and Spinnaker had the authority to hire and fire employees.

15. Spinnaker terminated Sacarol White from the Cummins jobsite after Prestigious placed White at the jobsite.

**ADMINISTRATIVE PROCEDURES**

16. More than thirty (30) days prior to the institution of this lawsuit, Sacarol White filed a charge of discrimination with the Commission against Prestigious, alleging Prestigious violated Title VII.

17. Sacarol White believed she worked for Prestigious (the temporary employment agency) and Cummins (the company with its name on the outside of the building where Sacarol White reported for work each day).

18. Sacarol White did not file a charge of discrimination against Spinnaker. But Spinnaker participated in the investigation of the charge of discrimination.

19. On May 16, 2023, the Commission issued to Defendants Prestigious and Spinnaker a Letter of Determination, finding reasonable cause to believe Defendants violated Title VII and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and to provide appropriate relief.

20. The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letter of Determination.

21. The Commission was unable to secure a conciliation agreement acceptable to the Commission.

22. On July 5, 2023, the Commission issued Prestigious a Notice of Failure of Conciliation.

23. On July 26, 2023, the Commission issued Spinnaker a Notice of Failure of Conciliation.

24. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

25. Since at least February 2021, Defendants engaged in unlawful employment practices at their locations in Memphis, Tennessee, in violation of §703(a) of Title VII, 42 U.S.C.§ 2000e-2(a).

26. The unlawful employment practices involved subjecting Sacarol White to unwelcomed sexual harassment based on her sex, female.

    a. On or around February 2021, Prestigious, a temporary employment placement

4

agency, placed Sacarol White as a temporary employee with Spinnaker, to work on the jobsite of Cummins.

  b. On Sacarol White's first day of work, Prestigious' Onsite Manager introduced Sacarol White to Shun Handy (Handy).

  c. Handy, a Spinnaker employee, became Sacarol White's designated Team Lead.

  d. A day or two after Sacarol White's placement/assignment with Spinnaker, Team Lead Handy began sexually harassing Sacarol White.

  e. Handy routinely discussed Sacarol White's body shape with the other male employees in her presence.

  f. Handy would make grunting noises at Sacarol White and say, "don't bend over like that."

  g. Handy sent Sacarol White text messages while they were both at work, making statements such as, "sitting down there lookin tasty," and "lookin like you need a good licking."

  h. Handy texted Sacarol White while away from work, requesting a picture of her breasts, "send me a picture of them pretty girls."

  i. Handy stuck his tongue out at Sacarol White in a sexually suggestive manner and said, "let me take you home. This is what I would do to you."

  j. The sexual harassment Sacarol White experienced was not welcomed.

  k. The sexual harassment Sacarol White experienced caused her severe anxiety.

  l. The sexual harassment Sacarol White experienced was severe or pervasive, and interfered with her ability to stay on the floor and perform her work duties.

  m. Sacarol White routinely left the floor to avoid Handy.

  n. The sexual harassment Sacarol White experienced caused her to leave her work

area so she could cry in the bathroom.

      o.      When Sacarol White ignored Handy he would watch her when she took breaks and make her return to the floor immediately.

      p.      The sexual harassment Sacarol White experienced unreasonably interfered with her performance at work and created a hostile work environment.

      q.      Sacarol White was warned by other female employees that Spinnaker would fire her if she complained about Handy's sexually harassing behavior.

      r.      Another male employee asked Sacarol White what it would cost for her to have sex with him.

      s.      Neither Prestigious nor Spinnaker provided a sexual harassment policy to Sacarol White, a temporary employee.

      t.      Prestigious and Spinnaker only provide the sexual harassment policy to its permanent employees.

      u.      Neither Prestigious nor Spinnaker provided any training on sexual harassment to Sacarol White.

      v.      When Sacarol White reported the sexual harassment, Prestigious and Spinnaker failed to take action.

      w.      Sometime between late March and early April of 2021, Sacarol White reported the sexual harassment to Relitha Poindexter (Poindexter), a supervisor and employee of Spinnaker.

      x.      Poindexter told Sacarol White her body was a distraction to the male employees.

      y.      Sacarol White saw no change in Handy's behavior after speaking with Poindexter.

z.  Around April of 2021, Sacarol White told DeAngelo Weddle (Weddle), Onsite Manager and employee of Prestigious, that she was experiencing sexual harassment in the workplace.

aa. Weddle learned from several other warehouse associates, male and female, that Handy was subjecting women to sexual harassment and treating women unfairly.

bb. Weddle learned from several other warehouse associates that Handy would talk about what the women were wearing and what he would do to them sexually.

cc. On or around April 2021, Sacarol White reported the sexual harassment to Juan Barnes (Barnes), a supervisor and employee of Spinnaker.

dd. Barnes told Sacarol White using words like "getting picked on" would get her fired and told her Human Resources did not speak with temporary employees.

27. The effect of the practices complained of above has been to deprive Sacarol White equal employment opportunities and to otherwise adversely affect her employment because of her sex, female.

28. The unlawful employment practices complained of above were intentional.

29. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Sacarol White.

30. The unlawful employment practices involved retaliating against Sacarol White by terminating her employment when Defendants learned Sacarol White continued to engage in protected activity by reporting sexual harassment.

a.  On or around February 2021, Prestigious, a temporary employment placement agency, placed Sacarol White as a temporary employee with Spinnaker.

b.  On Sacarol White's first day of work, Prestigious' Onsite Manager introduced

Sacarol White to Shun Handy (Handy).

      c.      Handy, Spinnaker employee, became Sacarol White's designated Team Lead.

      d.      A day or two after Sacarol White's placement with Spinnaker, Handy began sexually harassing Sacarol White.

      e.      Sacarol White was warned by other female employees that Spinnaker would fire her if she complained about Handy's sexually harassing behavior.

      f.      Sometime between late March and early April of 2021, Sacarol White reported the sexual harassment to Relitha Poindexter, a supervisor and employee of Spinnaker.

      g.      Rather than address the sexual harassment, Poindexter told Sacarol White her body was a distraction to the male employees.

      h.      Sacarol White witnessed no appreciable change in Handy's unlawful behavior after speaking with Poindexter.

      i.      On or around April of 2021, Sacarol White told DeAngelo Weddle, Onsite Manager and employee of Prestigious, that she was experiencing sexual harassment in the workplace.

      j.      Weddle learned from several other warehouse associates, male and female, that Handy was subjecting women to sexual harassment and treating women unfairly.

      k.      Weddle learned from several other warehouse associates that Handy would talk about what the women were wearing and what he would do to them sexually.

      l.      Weddle learned from associates that they did not report Handy's sexually harassing behavior, because they did not think anything would be done to correct Handy.

      m.      On or around April of 2021, Sacarol White reported the sexual harassment to Juan Barnes, a supervisor and employee of Spinnaker.

n.   Barnes told Sacarol White using words like "getting picked on" would get her fired and told her Human Resources did not speak with temporary employees.

o.   Barnes did not address the sexual harassment that Sacarol White experienced.

p.   Barnes did not report the sexual harassment that Sacarol White experienced.

q.   After Sacarol White spoke with Barnes she noticed Handy stopped responding to her messages to inform him when she was running behind or needed to miss work.

r.   On May 19, 2021, Spinnaker terminated Sacarol White and requested Weddle escort Sacarol White off the premises.

s.   Weddle was told Sacarol White was terminated for unauthorized breaks and production issues.

t.   While escorting Sacarol White off the premises, Sacarol White complained to Weddle about sexual harassment from supervisors and team leads.

u.   Weddle reported Handy's behavior to Ray Ely, VP of Operations for Prestigious.

31.   The effect of the practices complained about above deprived Sacarol White of equal employment opportunities, and otherwise adversely affected her status as an employee because of retaliation against her for engaging in protected activity.

32.   The unlawful employment practices complained of above were intentional.

33.   The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Sacarol White.

34.   The unlawful employment practices involved subjecting Starkisha White to unwelcomed sexual harassment, because of her sex, female.

a.   On or around May 2021, Prestigious, a temporary employment placement

agency, placed Starkisha White as a temporary employee with Spinnaker.

      b.      Starkisha White worked as a material handler.

      c.      On Starkisha White's first day with Spinnaker, Handy began sexually harassing Starkisha White.

      d.      Whenever Starkisha White walked around the facility, Handy would say things about her body shape.

      e.      The sexual harassment Starkisha White experienced was unwelcomed.

      f.      Handy would call Starkisha White and Sacarol White away from working on the line to join conversations in which Handy discussed their bodies in a sexual manner.

      g.      The sexual harassment Starkisha White experienced interfered with her performance at work.

      h.      Neither Prestigious nor Spinnaker provided a sexual harassment policy to Starkisha White.

      i.      Neither Prestigious nor Spinnaker provided any training on sexual harassment to Starkisha White.

      j.      The unwelcomed sexual harassment was sufficiently severe or pervasive enough to alter the terms and conditions of Starkisha White's employment, and to create a sexually hostile work environment.

35.      The effect of the practices complained of above has been to deprive Starkisha White of equal employment opportunities and to otherwise adversely affect her employment because of her sex, female.

36.      The unlawful employment practices complained of above were intentional.

37.      The unlawful employment practices complained of above were done with malice

or with reckless indifference to the federally protected rights of Starkisha White.

38. The unlawful employment practices involved retaliating against Starkisha White by terminating her employment when Defendants learned Starkisha White engaged in protected activity by reporting sexual harassment.

 a. Around May of 2021, Prestigious, a temporary employment placement agency, placed Starkisha White as a temporary employee with Spinnaker.

 b. On Starkisha White's first day with Spinnaker, Handy began sexually harassing Starkisha White.

 c. Around May of 2021, Starkisha White reported the sexual harassment to the Prestigious Onsite Supervisor (name unknown).

 d. Starkisha White was terminated the day she reported the sexual harassment.

39. The effect of the practices complained about above has been to deprive Starkisha White of equal employment opportunities, and otherwise adversely affect her status as an employee because of retaliation against her for engaging in protected activity.

40. The unlawful employment practices complained of above was intentional.

41. The unlawful employment practices complained of above was done with malice or with reckless indifference to the federally protected rights of Starkisha White.

42. The unlawful employment practices involved subjecting a class of females to unwelcomed sexual harassment based on their sex, female.

 a. Since as early as February of 2021, Prestigious, a temporary employment placement agency, has placed temporary employees with Spinnaker.

 b. Since as early as February of 2021, Handy has worked for Spinnaker as a Team Lead.

  c. Since as early as February of 2021, Handy has sexually harassed female employees, because of their sex, female.

  d. Handy routinely talked about the women in a sexually suggestive manner regarding how they looked in their clothes.

  e. On multiple occasions, Handy would have conversations with other male employees about the sexual things he would do to the female employees.

  f. Handy grabbed April's (last name unknown) back side in a very sexual manner while she was working on the floor.

  g. Because of Handy's conduct, April left the workplace and did not return.

  h. The sexual harassment the class of females experienced was not welcomed.

  i. The sexual harassment female employees experienced interfered with their performance at work.

  j. Neither Prestigious nor Spinnaker provided a sexual harassment policy to their employees.

  k. Neither Prestigious nor Spinnaker provided any training on sexual harassment to their employees.

  l. The unwelcomed sexual harassment was sufficiently severe and or pervasive enough to alter the terms and conditions of employment, and to create a sexually hostile work environment.

 43. The effect of the practices complained about above has been to deprive a class of female employees of equal employment opportunities, and otherwise adversely affect their status as an employee because of sex.

 44. The unlawful employment practices complained of above were intentional.

45. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Starkisha White.

46. The unlawful employment practices involved retaliating against a class of females for complaining about sexual harassment and by reporting sexual harassment.

   a. From as early as February of 2021, Prestigious, a temporary employment placement agency, has placed temporary employees with Spinnaker.

   b. From as early as February of 2021, Handy has worked for Spinnaker as a Team Lead.

   c. From as early as February of 2021, Handy has sexually harassed female employees, because of their sex, female.

   d. Prestigious and Spinnaker have failed to take corrective action when female employees reported sexual harassment.

   e. Prestigious and Spinnaker s terminated female employees after reporting sexual harassment.

47. The effect of the practices complained about above has been to deprive the class of females of equal employment opportunities, and otherwise adversely affect their status as employees because of retaliation against them for engaging in protected activity.

48. The effect of the practices complained of above resulted in depriving a class of female employees of equal employment opportunities, because of their sex, female, and otherwise adversely affect their status as employees because of retaliation against them for engaging in protected activity.

49. The unlawful employment practices complained of above were intentional.

50. The unlawful employment practices complained of above were done with malice

or with reckless indifference to the federally protected rights of a class of female employees.

## PRAYER FOR RELIEF

Therefore, the Commission respectfully requests that this Court:

    A.    Grant a permanent injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in harassment and retaliation or any other employment practice which discriminates on the basis of sex, female, because of complaints about the sexual harassment.

    B.    Order Defendants to provide mandatory training regarding Title VII and its prohibition against sexual harassment to all management and non-management officials in its various facilities.

    C.    Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

    D.    Order Defendants to make whole Sacarol White, Starkisha White, and a class of females by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

    E.    Order Defendants to make whole Sacarol White, Starkisha White, and a class of females by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

    F.    Order Defendants to pay Sacarol White, Starkisha White, and a class of females punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

                              Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 11730
FAYE.WILLIAMS@EEOC.GOV

/s/ *Donnie Snow*
Donnie Snow
Trial Attorney
TN Bar No. 030585
DONNIE.SNOW@EEOC.GOV

ASHLEY N. F. MOORE
Trial Attorney
TN Bar No. 036797
ASHLEY.FINCH@EEOC.GOV

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
200 Jefferson Avenue, 14th Floor
Memphis, TN  38103
Telephone: (901) 685-4609

GARY SULLIVAN
Assistant Regional Attorney
AR Bar No. 92051
GARY.SULLIVAN@EEOC.GOV

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
820 Louisiana St., Suite 200
Little Rock, AR  72201
Telephone: (501) 900-6140